UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Wayne F. Bell

    v.                                          Civil No. 09-cv-135-SM

James O'Mara, Superintendent,
Hillsborough County House of
Corrections

**REPORT AND RECOMMENDATION**

    Before the Court is Wayne Bell's request for preliminary injunctive relief (document no. 1). Bell alleges that his Eighth Amendment right to adequate medical care during his incarceration at the Hillsborough County House of Corrections ("HCHC") has been, and continues to be, violated. A hearing was held before me in this matter on May 26, 2009. After consideration of all of the evidence and testimony presented, for the reasons stated herein, I recommend that the request for preliminary injunctive relief be denied.

Background

    Based on the evidence presented at the May 26, 2009 evidentiary hearing, I find the facts as follows. Bell has been an inmate at the HCHC since May 2008. At the time he was

sentenced, Bell was taking a number of medications for which he had active and refillable prescriptions from his non-prison doctor.  Specifically, he was taking pain medication and a muscle relaxant for chronic neck, hip, and arm pain (Clinoril, Neurontin, Baclofen, ibuprofen, and Soma) related to old injuries and degenerative disk disease, medication for depression and anxiety (Wellbutrin and Seroquel), and medication for high blood pressure (Atenolol and Zestoretic).  New Hampshire Superior Court Judge James O'Neill issued an order prior to Bell's incarceration directing that Bell be provided with all of his active and refillable prescriptions immediately upon his admission to the HCHC.

   When Bell arrived at the jail, he was not given his prescribed medications.  Bell claims that initially he was not given any medications.  Eventually, the HCHC Medical Department did provide him with some medications – ibuprofen and Tylenol for pain, and Depakote for anxiety and depression, as well as a prescription to treat his high blood pressure.[1]  Bell testified

---

    [1]Bell testified that he was given high blood pressure medication for only two weeks upon his arrival at the HCHC and that the medication was then abruptly stopped.  The testimony at the hearing, as well as Bell's medical records, demonstrate that Bell is presently receiving blood pressure medication, but it is not clear whether, or for how long, Bell was without blood

that he had to spend seven days in the HCHC medical department in August 2008 because his blood pressure was elevated. Medical records reveal that he was observed in the medical unit for that period to insure that he did not pass out and to otherwise ensure his safety, as he had reported losing consciousness several times due to disregulation of his blood pressure. At that time, the Medical Director of the HCHC was Dr. Charles Ward.

In November and December 2008, in response to Bell's repeated requests for his previously prescribed medications, he was given Neurontin for pain by Dr. Christopher Braga, who became the HCHC Medical Director in November 2008. Over the next several months, Bell's Neurontin dosage was increased as Bell reported that he was still in pain.

Bell has not been provided with the prescription medication regimen that he was given by his outside doctor, and which he was on when he entered the HCHC. Bell has not been given a muscle relaxant or anti-inflammatory medication with the Neurontin and claims that, as a result, he still suffers from severe pain. At the May 26 hearing, Dr. Braga indicated that ibuprofen, an anti-inflammatory drug, was medically appropriate for Bell, and that

---

pressure medication earlier in his incarceration.

he could, and would, provide Bell with ibuprofen.  Although this is an anti-inflammatory medication, and not the specific muscle relaxant Bell seeks, Bell concedes that ibuprofen helps him "a little bit."  Dr. Braga indicated that given Bell's narcotics abuse history, muscle relaxants are not medically indicated for him.  Further, Dr. Braga stated that because Bell's pain was caused by arthritis and not muscle tension, a muscle relaxant was not likely to help reduce his pain.

Bell testified at the hearing that, during Dr. Ward's tenure at the HCHC, he was inadequately treated for his mental health problems.  Since Dr. Ward's departure, however, Bell stated that he has been seen by mental health professionals and is not being denied mental health medications.  Bell also states that his blood pressure is well-controlled on the two blood pressure medications he is currently taking.

Bell claims that he has developed an abdominal hernia since he has been at the HCHC that requires surgery to repair, but that no one at the HCHC medical department will authorize surgical treatment for him.  Dr. Braga testified at the hearing that Bell's hernia does not require surgical treatment unless and until his intestines emerge from the hernia and twist externally.

Because Bell's internal organs, when they protrude, can be manually pushed back through the hernia without difficulty, no emergency exists and surgery is not, therefore, necessary at this time.  Bell did not contradict this testimony.

Dr. Braga saw Bell for a physical in May 2009.  Bell did not mention the hernia or his mental health issues at that time.  Dr. Braga testified that if he is advised of a medical or mental health problem within his purview, he will address and treat it.  Bell agreed with this sentiment, stating that the HCHC medical personnel have "made a fair attempt, yes, to help me out with the medications."

Bell stated at the hearing that he would like to be seen at a hospital to evaluate the condition of his neck.  Dr. Braga testified, however, that Bell has had an extensive evaluation with regard to his neck pain in the past, and that the result of that assessment was that surgical intervention was not indicated, and that Bell needs to be medically managed for pain control, which the HCHC is doing.  Bell believes that the condition of his neck has worsened since his last evaluation, and he would like to have another evaluation.  Dr. Braga does not believe that, at

this time, such an evaluation is necessary to enable him to provide Bell with adequate medical care.

## Discussion

I. Standard of Review

Preliminary injunctive relief is available to protect the moving party from irreparable harm, so that he may obtain a meaningful resolution of the dispute after full adjudication of the underlying action. See Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007). Such a situation arises when some harm from the challenged conduct could not be adequately redressed with traditional legal or equitable remedies following a trial. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); see also Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994) (explaining irreparable harm and its effect on the contours of preliminary injunctive relief). Absent irreparable harm, there is no need for a preliminary injunction. The need to prevent irreparable harm, however, exists only to enable the court to render a meaningful disposition on the underlying dispute. See CMM Cable Rep., Inc. v. Ocean Coast Props., 48 F.3d 618, 620-21 (1st Cir. 1995)

(explaining the purpose of enjoining certain conduct as being to "preserve the 'status quo' . . . to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs"); see also Stenberg v. Cheker Oil Co., 573 F.2d 921, 925 (6th Cir. 1978) ("The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.").

A preliminary injunction cannot issue unless the moving party satisfies four factors which establish its need for such relief. See Esso Std. Oil Co. v. Monroig-Zavas, 445 F.3d 13, 17-18 (1st Cir. 2006) (discussing the requisite showing to obtain a preliminary injunction); see also Ross-Simons, 102 F.3d at 18-19 (explaining the burden of proof for a preliminary injunction). Those factors are: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Esso Std. Oil, 445 F.3d at 18. "The sine qua non of

this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). Yet, "the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem." Ross-Simons, 102 F.3d at 19.

Bell is incarcerated at the HCHC, where he claims he has been denied adequate medical care in that he has not been prescribed a muscle relaxant and has not been taken to the hospital to have his abdominal hernia evaluated or to have his neck reevaluated.[2] Bell seeks: (1) an order directing the HCHC Medical Department to prescribe a muscle relaxant such as the one he received as an outpatient prior to his incarceration; (2) an order directing the HCHC to take him to the hospital to have his abdominal hernia evaluated; and (3) an order directing the HCHC to take him to an appropriate medical specialist to have his degenerative disk disease reevaluated to determine whether or not his condition has worsened.

---

[2]Initially, it appeared that Bell was alleging inadequate mental health care in addition to his medical care claims. At the hearing in this matter, however, Bell stated that he is not seeking injunctive relief regarding his mental health care.

II.  Likelihood of Success on the Merits

Jail officials have an obligation under the Eighth Amendment to protect inmates from prison officials acting with deliberate indifference to their serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 831 (1994).  To assert a viable cause of action for inadequate medical care, a prisoner must first state facts sufficient to allege that he has not been provided with adequate care for a serious medical need.  Id.; Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The inmate must then allege that a responsible prison official was aware of the need or the facts from which the need could be inferred, and still failed to provide treatment.  See Estelle, 429 U.S. at 106.

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations.  See United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy.

See Feeney v. Corr. Med. Servs., 464 F.3d 158, 162 (1st Cir. 2006) ("When a plaintiff's allegations simply reflect a disagreement on the appropriate course of treatment, such a dispute with an exercise of professional judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation." (internal citations omitted)). Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). Constraints inherent in a prison setting may affect the choice of care provided and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state. Wilson v. Seiter, 501 U.S. 294, 302 (1991).

A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated. See Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835-47); see also Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990) (defining a serious medical need as one "that has been diagnosed

by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (internal citations omitted).

I conducted a preliminary review in this matter, and by Order issued simultaneously with this Report and Recommendation, I directed service of this action, as I found that Bell had alleged the minimum facts necessary to state claims for inadequate medical care upon which relief might be granted.  At this early stage of the proceedings, where discovery has not yet been completed, I cannot determine whether or not Bell is likely to actually succeed on the merits of his underlying Eighth Amendment claims.  Assuming, however, for purposes of this Report and Recommendation, that Bell can demonstrate a likelihood of success on the merits of his claims, my finding, explained below, that he has failed to demonstrate irreparable harm, renders determination of Bell's likelihood of success on the merits unnecessary.

III. <u>Irreparable Harm</u>

Even if Bell has demonstrated that he was likely to succeed on the merits of his claim for a deprivation of adequate medical care, he has failed to demonstrate that he would suffer

irreparable harm absent an injunction.  Bell testified that he is receiving all of his medications, except a muscle relaxant, and that without his muscle relaxant, his pain medication is ineffective.  Bell conceded at the hearing, however, that receiving ibuprofen in conjunction with his current pain medication would provide some measure of relief.  Dr. Braga testified that he has been attentive to Bell's complaints since he arrived at the HCHC in November 2008.  Dr. Braga has provided Bell with all of the medication he seeks, except that which Dr. Braga testified is not medically indicated for Bell, and has adjusted his pain medication dosage upward in response to Bell's complaints that his current doses were ineffective.  In addition, Dr. Braga agreed to provide Bell with ibuprofen with his pain medication in order to provide him additional pain relief.

   Bell asserted at the hearing that he continues to be denied needed medical care for his abdominal hernia and a reevaluation of the condition of the disks in his neck.  Dr. Braga's credible testimony, however, countered these assertions.  Dr. Braga testified that although elective surgery is available, there is no present medical need to treat Bell's hernia surgically.  As to Bell's request for diagnostic procedures for his neck, Dr. Braga

testified that a thorough evaluation of his neck condition has been done, that his condition continues to be monitored by medical staff, and that there is no need for reassessment of Bell's condition at this time.

Bell also complained that his neck condition is causing a ringing in his ears. Bell concedes that he did not bring the ringing in his ears to Dr. Braga's attention prior to the preliminary injunction hearing. Dr. Braga indicated that ringing in the ears was not likely connected to Bell's neck pain, but was more likely a symptom of hearing loss or an unrelated medical condition.

Finally, the evidence at the hearing established that Bell, largely due to his frustration with not receiving responsive medical treatment when Dr. Ward was the HCHC Medical Director prior to November 2008, failed to request assistance from Dr. Braga for many of his problems. At the hearing, Dr. Braga expressed a willingness to appropriately treat Bell, as needed, for any medical problem brought to his attention in the future. It does not appear, therefore, that an injunction is necessary at this time to insure that Bell receives constitutionally adequate medical care at the HCHC in the future. Accordingly, I cannot

find that Bell has alleged that he will be irreparably harmed if the Court fails to issue an injunction in this matter.  There is no need for me to consider the remaining two preliminary injunction factors, as even if Bell is able to demonstrate that these factors weigh in his favor, I would recommend that no injunction issue.  Accordingly, I recommend that Bell's request for preliminary injunctive relief be denied.

## Conclusion

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:   June 9, 2009

cc:     Wayne F. Bell, pro se
        Carolyn Kirby, Esq.